UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| ELISABETH LANGLEY,<br><br>Plaintiff,<br><br>v.<br><br>CHECK GAME SOLUTIONS, INC., CATHERINE M. KEY, AND CHARLES P. KEY,<br><br>Defendants. | CASE NO: 05-CV-2265 W (AJB)<br><br>**ORDER (1) GRANTING DEFENDANT CHARLES KEY'S MOTION TO DISMISS, (2) DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AS MOOT, AND (3) GRANTING IN-PART AND DENYING IN-PART THE MOTION FOR ATTORNEY'S FEES** |
|---|---|

Pending before the Court are three motions. First, Plaintiff Elisabeth Langley moves for (1) entry of default and default judgment against Defendant Charles Key, and (2) an award of attorney's fees and costs against all defendants. Second, Defendant Charles Key moves to dismiss the First Amended Complaint for improper service.

The Court decides the matter on the papers submitted and without oral argument. See Civ.L.R. 7.1(d.1). For the reasons outlined below, the Court **GRANTS** the motion to dismiss, **DENIES** the motion for entry of a default judgment, and **GRANTS IN-PART** and **DENIES IN-PART** the motion for attorney's fees and costs.

## I. BACKGROUND

On December 13, 2005, Plaintiff Elisabeth Langley filed this lawsuit against Check Game Solutions and its owner, Catherine M. Key (referred to collectively as "Check Game"), for violation of the Fair Debt Collections Practices Act, 15 U.S.C. 1692 ("the FDCPA"). Langley alleges that Check Game unlawfully attempted to collect a debt owed for a magazine subscription, causing $91 in actual damages. She also seeks the maximum statutory damages of $1,000.

On October 16, 2006, Langley filed a First Amended Complaint, adding Defendant Charles Key. On November 18, 2006, Langley attempted to serve him at 8507 Apperson Street in Sunland, California. When the process server arrived at the address, Key's mother, Kathleen Bowman, stated that Key did not live at that address. Nevertheless, the process server left the summons and First Amended Complaint with Bowman, who then called Langley's counsel and stated that Key did not live at the Apperson Street residence. Bowman then mailed the summons and First Amended Complaint back to Langley's counsel.

Approximately one week later, Langley's counsel mailed copies of the summons and First Amended Complaint to Charles Key at 8507 Apperson Street. Bowman again returned the documents.

Meanwhile, in November 2006, Langley and Check Game agreed to settle the case. Check Game agreed to pay (and has paid) $1,091 to Langley. This amount represents Langley's actual and the maximum statutory damages. The parties did not reach an agreement on the amount of attorney's fees to be awarded.

As of April 24, 2007, Defendant Charles Key had not responded to the First Amended Complaint. Accordingly, Langley filed a motion for default judgment. Key eventually filed an opposition, and a motion to dismiss for improper service. In addition to the default motion, Langley filed a motion for an award of attorney's fees and costs against all defendants. In total, Langley seeks $94,738 in fees and costs.

## II. MOTION TO DISMISS

### A. Standard.

Federal courts cannot exercise personal jurisdiction over a defendant without proper service of process. Omni Capital Int'l, Ltd. v. Wolff & Co., 484 U.S. 97, 104 (1987). Where service is insufficient, a court has discretion to dismiss the action or quash service. S.J. v. Issaquah School Dist. No. 411, 470 F.3d 1288, 1293 (9th Cir. 2006). To determine whether service was proper, courts look to the requirements of Federal Rule of Civil Procedure 4. Under Rule 4(e), service may be effected pursuant to either federal law, or "pursuant to the law of the state in which the district court is located, or in which service is effected." Accordingly, service of process will be upheld if it conforms to applicable state service of process rules.

California law provides for service of summons upon an individual person "by delivering a copy of the summons and of the complaint to such person or to a person authorized by him to receive service of process." Cal. Civ. Proc. Code § 416.90. If, after reasonable diligence, the summons and complaint cannot be personally delivered in accordance with section 416.90, several methods of substitute service are permitted. Cal. Civ. Proc. Code § 415.20(b). One such method is by leaving a copy of the summons and complaint at the person's "usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household . . . at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Cal. Civ. Proc. Code § 415.20.

### B. Langley did not properly serve Charles Key.

Charles Key moves to dismiss for improper service. Langley argues that service was proper pursuant to California Code of Civil Procedure section 415.20(b). Specifically, Langley contends that Key was served at his "usual mailing address." However, this section requires reasonably diligent efforts at personal service before any

substitute method is effected.  <u>See also</u> <u>Burchett v. City of Newport Beach</u>, 33 Cal.App.4th 1472, 1477 (1995) ("As noted in the Legislative comment to the section, 'Personal delivery must be attempted in all cases where this alternative method of service is used.'"); <u>Espindola v. Nunez</u>, 199 Cal.App.3d 1389, 1391-92 (1988) ("Ordinarily, . . . two or three attempts at personal service at a proper place should fully satisfy the requirement of reasonable diligence and allow substituted service to be made."). Langley has not sufficiently demonstrated reasonable diligence.

Langley's counsel states that she enlisted the aid of an outside investigator to locate Charles Key, and that this investigator indicated that Key was currently "using the address at 8507 Apperson Street . . . ." (Arleo Reply Decl., ¶ 5.) But Langley and her counsel fail to identify the basis for the investigator's belief.[1] This is important because Key and Bowman submitted declarations stating that Key did not reside at that address. Nor is there any indication that Langley attempted to locate Key after Bowman informed Langley's counsel that Key did not reside at the Apperson Street residence. Without any further detail or description regarding the steps taken to locate Key, the Court must find that Langley has not demonstrated reasonably diligent efforts at personal service.

Similarly unavailing is Langley's argument that Key had actual knowledge of the lawsuit and, therefore, personal jurisdiction can be asserted over him. Langley argues that "Mr. Key appeared on behalf of defendants Check Game Solutions, Inc. and Catherine M. Key . . . at the March 10, 2006 Early Neutral Evaluation conference." (Pls.' Reply to Charles Key's Opp'n, 1:19–21.)  However, Key was not a party to the lawsuit at the Early Neutral Evaluation conference. (<u>See</u> March 13, 2006 Order by Judge Battaglia [Docket #9].)  The fact that he appeared at the ENE months before being named as a defendant does not subject him to this Court's jurisdiction. Langley is still required to properly serve Key in order to make him a party to the lawsuit.

---

[1] In fact, Langley's counsel admits that she is "unable to locate confirmation of [the investigator's] research in [her] office files." (<u>Id.</u>)

Even if Langley had demonstrated reasonably diligent efforts to personally serve Key, the Court is not persuaded that she then effected proper substitute service. Section 415.20 provides that one method of substitute service is effected by leaving a copy of the summons and complaint at the person's "usual mailing address . . . ." Cal. Civ. Proc. Code § 415.20. Here, Key has testified that he receives his car payment bills, personal correspondence, credit card bills, and business documents at a P.O. Box in Sunland, California. (Key Reply Decl., ¶2.) Additionally, Bowman has testified that at the time Langley attempted to effect service, Key did not live at 8507 Apperson Street. (Bowman Decl., ¶3.) For these reasons, Langley has not established that Key was served at his "usual mailing address."

Because service was improper, the Court grants Key's motion.[2]

### III. ATTORNEY'S FEES

Langley next moves the Court for an award of attorney's fees and costs totaling $94,738.[3] Langley states that her attorney Elizabeth Arleo expended 202.5 hours, attorney Vania Chaker expended 31.3 hours, paralegal services totaled 53 hours, and an additional $7,075.77 in costs and litigation expenses resulted during the prosecution of the action. Langley further argues that the reasonable hourly rate for an attorney of Ms. Arleo's experience is $350. Check Game's primary argument in opposition is that the number of hours expended by Langley's counsel is unreasonable. For the reasons discussed below, the Court finds that Ms. Arleo's hourly rate is appropriate, but that the number of hours billed is not.

#### A. Standard.

Where a party is successful under the FDCPA, section 1692k(a)(3) allows the party to recover "the costs of the action, together with a reasonable attorney's fee as

---

[2] Because the motion to dismiss is granted, Langley's motion for a default judgment is moot.

[3] This includes the fees and costs requested in Langley's reply to the motion for attorney's fees.

1 determined by the court." 15 U.S.C. 1692k(a)(3). The appropriate fee award is
2 determined by multiplying the number of hours reasonably worked on litigation by a
3 reasonable hourly rate, arriving at a "lodestar." See Hensley v. Eckerhart, 461 U.S. 424,
4 433 (1983); McGrath v. County of Nevada, 67 F.3d 248, 252 (9th Cir. 1995). The
5 Court may then make adjustments to the lodestar figure, if necessary, to arrive at a
6 reasonable fee. Blum v. Stenson, 465 U.S. 886, 888 (1984).

7 "The fee applicant bears the burden of documenting the appropriate hours
8 expended in the litigation and must submit evidence in support of those hours worked."
9 Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992) (citing Hensley, 461 U.S. at
10 433, 437). "The party opposing the fee application has a burden of rebuttal that
11 requires submission of evidence to the district court challenging the accuracy and
12 reasonableness of the hours charged or the facts asserted by the prevailing party in its
13 submitted affidavits." Id. at 1397–98 (citing Blum, 465 U.S. at 892 n. 5, Toussaint v.
14 McCarthy, 826 F.2d 901, 904 (9th Cir. 1987)).

15 Here, Defendants Catherine Key and Check Game eventually settled and agreed
16 to pay Langley the maximum statutory damages, plus her actual damages. Langley was,
17 therefore, successful in this case and is entitled to reasonable attorney's fees and costs.

### B. The Hourly Rate.

20 In setting a reasonable hourly rate, courts are directed to compare the requested
21 rates with the "prevailing market rate," which is the rate "prevailing in the community
22 for similar services of lawyers with reasonably comparable skill, experience, and
23 reputation." Blum, 465 U.S. at 895.

24 Langley argues that her attorney's $350 hourly billing rate is fair, reasonable and
25 consistent with rates charged by other counsel in the local community. Check Game
26 asserts that Langley failed to provide evidence supporting the hourly rate. (See Def.s'
27 Oppo., 7:22–23.) Check Game is wrong.

28 Langley cites two FDCPA cases in which her attorney was awarded fees based on
the $350 hourly rate. The attorney-fee award in Nutter v. NCO Financial Services,

1  Inc., Case No. 04-cv-2266, is particularly instructive because the case involved an
2  FDCPA claim from this District.  Accordingly, the $350 hourly rate awarded in Nutter
3  supports Langley's contention that her attorney's hourly rate is consistent with the
4  prevailing market rate.
5       Next, Langley relies on Richard M. Pearl's declaration that was filed in another
6  FDCPA lawsuit in the Northern District of California.  Pearl is an expert on court-
7  awarded attorney's fees, and is frequently asked to opine on the reasonableness of hourly
8  rates.  According to his declaration, court-ordered attorney's fee awards in 2006 for
9  attorneys with 7 to 9 years of experience were based on an hourly rate of $250– $385 an
10 hour.[4]  Additionally, Pearl discusses a survey he performed of the billing rates of
11 California attorneys at small and large law firms.  Particularly relevant are the billing
12 rates at smaller firms.  According to Pearl's survey, in 2004, the rates charged by small
13 firms for attorneys with 7 to 9 years of experience ranged from $320 to $380 an hour.
14      Finally, Langley relies on her attorney's declaration, in which Ms. Arleo states
15 that she charges $350 an hour "to individual clients and in Fair Debt Collection
16 Practices Act ... cases such as this...." (Arleo Decl., ¶11.)  The Court notes that this
17 rate is within the range charged in 2004 by small firms identified in Pearl's survey.
18      Check Game does not dispute any of the statements in Pearl's declaration or Ms.
19 Arleo's declaration.  Nor does Check Game provide any evidence suggesting that $350
20 is not the prevailing market rate in San Diego for someone with Ms. Arleo's experience.
21 Accordingly, the Court finds that Langley has established that $350 is a reasonable
22 hourly rate.
23
24      **C.      Recoverable Hours.**
25      The district court has the authority to "exclude from the initial fee calculation
26 hours that were not reasonably expended." Hensley, 461 U.S. at 433-34.  The district
27 court is required to "provide a concise but clear explanation of its reasons for the fee
28

---

[4] Ms. Arleo has 8 years of experience.

1  award." Id. at 437.  The Ninth Circuit has interpreted Hensley to require the court "to
2  give at least some indication of how it arrived at the amount of compensable hours for
3  which fees were awarded for meaningful appellate review."  Gates, 987 F.2d at 1399
4  ("[W]e do not require an elaborately reasoned, calculated, or worded order . . . a brief
5  explanation of how the court arrived at its figures will do, something more than a bald,
6  unsupported amount is necessary. [Citations omitted.]").  In other words, "the district
7  court has the authority to make across-the-board percentage cuts either in the number
8  of hours claimed or in the final lodestar figure as a practical means of trimming the fat
9  from a fee application."  Id. (citing the Second, Third, Seventh, and Tenth Circuits).

10  Langley seeks reimbursement for 233.8 attorney hours and 53 paralegal hours.
11  For the following reasons, the Court finds that the number of recoverable hours sought
12  is unreasonable and must be reduced.

### 1.  *The billing records are incomplete.*

Langley provided the Court with a daily summary of the time billed by her attorneys and paralegal.  The summary provided by Ms. Arleo, however, is incomplete because numerous descriptions are cut off, and thus the amount of time billed for certain days is not substantiated.

For example, on March 10, 2006, Langley's counsel billed 3 hours and 42 minutes.  But the corresponding description accounts for only 2 hours and 30 minutes: 2 hours for traveling and attending the "ENE" and 30 minutes to meet with Langley.  Thus, 1 hour and 12 minutes are unaccounted for.  Similarly, on August 22, 2006, Langley's counsel billed 7 hours and 12 minutes, but the time record only accounts for 5 hours.  Based on the Court's review of the billing summary, 27 hours and 24 minutes are unaccounted for.  The number of recoverable hours will, therefore, be reduced accordingly.

//

### 2. *Fees for defending the counter claim.*

Langley's counsel spent approximately 24 hours preparing a motion to dismiss Check Game's state-law counter claims for abuse of process and emotional distress. (Arleo Decl., ¶21.)  Check Game argues that Langley is not entitled to these fees.  The Court agrees.

Section 1692k(a)(3) provides as follows:

> Except as provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--
> ***
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. 1692k(a)(3).

There are no cases addressing whether a prevailing party may recover fees for defending counter claims in an FDCPA case.  In Lacy v. General Finance Corporation, 651 F.2d 1026 (5th Cir. 1981), however, the Fifth Circuit evaluated whether the Truth in Lending Act ("TILA") allows a plaintiff to recover fees incurred in defending counter claims.  Relying on the statutory language, the Fifth Circuit held that fees were only available for prosecuting the TILA claims, not for defending against the counter claims:

> [TILA] plainly provides that attorney's fees may be awarded if they are incurred "to enforce the foregoing liability."  "Foregoing liability" refers to the claims established by TILA; a plaintiff is not enforcing a TILA liability when he or she is defending against a state law debt claim.

Id. at 1029.  Additionally, the Fifth Circuit recognized that its decision was consistent with the "American Rule" regarding attorney's fees.  Under this rule, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser." Id. (citing Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247 (1975)).

TILA's attorney-fee provision is identical to the one found in the FDCPA.

Langley is only entitled to fees expended *to enforce* liability under the statute. The Court agrees with the Fifth Circuit's conclusion that fees incurred in defending against counter claims are not fees expended to enforce liability under the statute. Accordingly, Langley is not entitled to recover the attorney's fees incurred in working on the motion to dismiss Check Game's counter claims.

### *3.    Fees related to Charles Key.*

Langley is seeking to recover fees related to Defendant Charles Key. In light of the Court's ruling on his motion to dismiss and Langley's motion for default, Langley did not prevail against him. Accordingly, the Court disallows fees related to Charles Key.

In attempting to eliminate these fees and costs, however, the Court was confronted with another problem. Langley's counsel's billing descriptions are often too vague to allow the Court to identify fees expended in connection with Charles Key. For example, Langley is not entitled to recover attorney's fees from Check Game and Catherine Key that were generated in preparing the opposition to Charles Key's motion to dismiss or the motion for default judgment. But the billing entries from April 22, 2007 to June 4, 2007 lump together Langley's counsel's work on these two motions with her work on the reply to the motion for attorney's fees (for which Langley is entitled to fees). Accordingly, the Court cannot determine the amount of time Langley's counsel devoted to working on the motion for attorney's fees versus the other two motions. Because 2 of the three motions dealt exclusively with Charles Key (i.e., the motion to dismiss and motion for default judgment), the Court is, therefore, reducing the 25.5 hours billed by Ms. Arleo by 17 hours (or 2/3 of the amount of time billed).

In addition to Ms. Arleo's work on Charles Key's motion to dismiss and the default motion, the Court disallows the following fees related to Charles Key: 24 hours billed from July 16, 2006 to August 30, 2006 attempting to prove Charles Key's covert control of Check Game; 11 hours and 30 minutes billed by the paralegal in connection with service of the First Amended Complaint on Charles Key; and 5 hours and 12

minutes billed from November 8, 2006 to April 11, 2007 by Ms. Arleo related to Charles Key.

Finally, Check Game argues that Langley should not be entitled to attorney's fees spent drafting the motion for leave to file the First Amended Complaint. As Langley points out, however, the motion was necessitated by Check Game's refusal to stipulate to the amendment and then subsequent failure to file an opposition. Because the motion was the result of Check Game's litigation tactics, Langley is entitled to those fees.

### *4.  Lodestar reduction.*

In deciding attorney's-fee awards, courts may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of the twelve factors set forth in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975); Gates, 987 F.2d at 1402. Based on its review of the records, the Court finds that a downward adjustment is appropriate in this case.

This litigation did not involve novel or complex legal issues. This is particularly true given Ms. Arleo's experience in handling FDCPA cases, including her work as class counsel. The primary issue was whether Check Game's correspondence to Langley violated the FDCPA. While the Court recognizes that Check Game is partly responsible for the unusually high fees incurred in this case, when the litigation settled, neither side had filed any dispositive motions, and the case settled well before the pre-trial conference. Additionally, although Langley propounded written discovery, no depositions appear to have been taken, and this does not appear to have been a case involving voluminous documents.

The Court is particularly concerned about the number of hours billed prior to litigation, for discovery, and on motion practice. For example, Langley seeks recovery for 23.5 hours of "pre-litigation work and filing the complaint" that was performed by

her counsel from May 25, 2005 through December 16, 2005.[5] Having reviewed the Complaint, the Court finds that this amount of time was unreasonable. The initial Complaint is only 7 pages, 6 of which consist primarily of simple or boilerplate allegations regarding the identity of the parties, jurisdiction, a description of the FDCPA, and the prayer for relief.[6]

With regard to the factual allegations, they fit on one page and reveal that Langley purchased a magazine subscription from two high-school aged girls raising money for a spring-break trip. (Compl., ¶3.) Langley later changed her mind about the subscription, and ordered her bank to stop payment on the check. (Id., ¶4.) Several months later, Langley received three short debt-collection letters from Check Game. (Id., ¶¶5-8.)

All of the factual information identified in the Complaint was clearly within Langley's personal knowledge, and thus could have been obtained from a one-hour interview (at most) and review of Check Game's three short letters. Given the simple background and Ms Arleo's experience in FDCPA cases, the Court finds that the amount of time billed for pre-litigation work and preparing the Complaint is unreasonable.

Langley's counsels' work on the reply in support of the motion for attorney's fees provides another example of the unreasonable amount of time expended in the litigation. Langley's attorneys appear to have billed approximately 20 hours for work on the reply. But there is little dispute that Langley prevailed in this case, and that she is entitled to an award of attorney's fees. Additionally, although Check Game opposed the motion, it cited no opposing evidence and raised few meaningful objections. The unreasonable number of hours is likely the result of duplication of effort between

---

[5] The Court notes that for the period fo May 25, 2005 to December 16, 2005, there is a discrepancy between the number of hours claimed by Ms. Arleo in her declaration (23.5) and the number of hours reflected in her billing summary (20).

[6] Ms. Arleo admits that she has represented other FDCPA plaintiffs, and therefore has necessarily drafted other FDCPA complaints.

1  Langley's two attorneys, Ms. Arleo and Ms. Chaker.  For example, the Court notes that
2  Ms. Chaker billed for legal research that would be expected in preparation of the
3  original moving papers, such as research on the appropriateness of attorney's fees in this
4  case, and reviewing the legislative intent.

5  As for discovery, Langley's counsel spent in excess of 50 hours preparing
6  discovery, meeting and conferring, and filing the motion to compel.  Significantly, this
7  does not include the "time-consuming and costly" outside investigation Langley's
8  counsel performed during July and August 2006.  While some of this time was justified
9  by Check Game's conduct, based on the issues involved in this litigation, the limited
10 number of parties, and the substance of the original discovery requests, the Court
11 concludes that the amount of time spent on discovery was unreasonable.

12 Indeed, the Court's concern regarding the amount of time spent on this case is
13 supported by the cases cited in Langley's moving papers.  In arguing that "courts
14 consistently award attorney's fees in FDCPA cases that are disproportionate to the
15 amount of plaintiff's recovery" (Pls.' Mot., 8:11–20), Langley cited four cases involving
16 awards ranging from $10,110 to $69,872.  Not only are the amount of fees requested by
17 Langley substantially higher than the awards in those cases, but the $69,872 fee was
18 awarded in a class-action lawsuit, in which the parties filed multiple summary-judgment
19 motions, as well as class-certification motions.  See Gradisher v. Check Enforcement
20 Unit, Inc., 2003 WL 187416 (W.D.Mich. 2003).  This case, in contrast, was not a class
21 action and did not include a single dispositive motion.

22 For all of these reasons, the Court finds that an additional 25% reduction in the
23 fee award is appropriate.

24

25 **IV.   CONCLUSION AND ORDER**
26 In light of the foregoing, the Court **GRANTS** Defendant Charles Key's motion
27 to dismiss [Doc. No.33].  However, under the circumstances of this case, the Court
28 elects to quash the summons and retain jurisdiction over this case to allow Langley the
opportunity to serve Charles Key.  In light of this ruling, Langley's motion for default

and a default judgment against Charles Key [Doc. No. 29] is **DENIED** as moot.

The Court also **GRANTS** Langley's motion for attorney's fees [Doc. No.29] as to Defendants Check Game and Catherine Key, but **DENIES** the motion as to Defendant Charles Key. Based on the adjustment outlined above, the Court awards Langley $39,049 in attorney's fees, and $7,075.77 in costs.[7]

**IT IS SO ORDERED.**

DATED: September 12, 2007

_____
Hon. Thomas J. Whelan
United States District Judge

---

[7] The attorney's fees portion of the award was calculated as follows: $87,662.23 (requested attorneys' fees) - $35,597.50 (the 97.6 attorney hours and 11.5 paralegal hours disallowed) = 52,064.73 - 13,016 (25% reduction) = $39,049.